IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ADNAN ALATTIYAT,

       Plaintiff,

v.                                              No. 06-2437 B

THE CITY OF MEMPHIS,
KATHY L. GOODEN, individually
and in her official capacity as a
Memphis Police Officer, DARNELL
GOOCH, individually and in his
official capacity as a Memphis
Police Officer, DONALD R.
DICKERSON, individually and in his
official capacity as a Memphis Police
Officer,

       Defendants.

_____

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT CITY OF
MEMPHIS AND GRANTING IN PART AND DENYING IN PART THE MOTION FOR
SUMMARY JUDGMENT OF THE DEFENDANT OFFICERS
_____

       The Plaintiff, Adnan Alattiyat, has sued the Defendants City of Memphis and Memphis Police Officers Kathy L. Gooden, Darnell Gooch, and Donald R. Dickerson, pursuant to 42 U.S.C. § 1983, alleging that they violated Alattiyat's Fourth and Fourteenth Amendment rights by unreasonably searching and seizing him as well as depriving him of his due process rights.[1] The

---

[1] In a previous order in this case, the Court dismissed the official capacity claims against the individual defendant officers, dismissed the conspiracy claims, if any, and dismissed, without prejudice, the Plaintiff's claims pursuant to the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-201. (Order Granting in Part, Den. in Part Mot. to Dismiss, Mar. 15, 2007, at 5-8).

Plaintiff's complaint also includes various state law claims. Before the Court are the motions for summary judgment of Defendants City of Memphis and Gooden, Gooch, and Dickerson pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Plaintiff has responded[2] and this motion is now appropriate for disposition. For the reasons set forth below, the motions to dismiss are GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are undisputed unless noted. Alattiyat is the operator and manager of a convenience store in Memphis, Tennessee. (Am. Compl. ¶ 8). On the morning of June 24, 2005, Gooden's son and nephew entered the Plaintiff's store and were observed shoplifting. (Am. Compl. ¶ 9); (Def. City of Memphis' Statement of Undisputed Material Facts in Supp. Mot. Summ. J. "City's Facts" ¶¶ 1, 2). As a result, the Plaintiff approached the boys and asked them "whether they had anything they needed to pay for." (Am. Compl. ¶ 10); (Def. Officers Statement of Undisputed Material Facts in Supp. Mot. Summ. J. "Officers' Facts" ¶ 3). According to the minors, Alattiyat locked the door, made them "take off their shoes and pull their shirts off, and . . . take their pockets out." (Officers' Facts ¶ 4). The boys denied taking anything, and thereafter, Alattiyat allowed them to leave. (Compl. ¶ 11); (Officers' Facts ¶ 7).

After learning about the encounter, Gooden contacted other Memphis Police Officers, including Gooch, and some of those individuals accompanied Gooden to the convenience store to speak to the Plaintiff. (Am. Compl. ¶¶ 12-19); (Officers' Facts ¶¶ 12,16, 19). Alattiyat was alone inside the store as the individuals led by Gooden entered, began yelling "racial slurs" at him and

---

[2]In his response, the Plaintiff states that he no longer is asserting a claim against Officer Dickerson in his individual capacity. Therefore, Alattiyat's claims against this Defendant are DISMISSED with prejudice.

threatened to have him deported to Iran.  (Am. Compl. ¶¶ 25-27); (Pl.'s Statement of Undisputed Facts in Resp. Mot. Summ. J. "Pl.'s Facts" ¶ 16).  When he asked her what was wrong, Gooden told the Plaintiff to "shut-up and listen to what she had to say."  (Am. Compl. ¶ 28); (Officers' Facts ¶ 25).  Alattiyat was frightened and told the officers that if they were not there on official police business, they needed to leave.  (Am. Compl. ¶ 30).  Because the Defendants refused to leave, the Plaintiff attempted to call 9-1-1.  (Am. Compl. ¶¶ 31-41).  While he was on the phone, the Plaintiff had one of his hands hidden beneath the counter[3], which caused Officer Gooch to suspect that Alattiyat had a weapon. (Officers' Facts ¶¶ 28-29).  Officer Gooch told the Plaintiff to stop reaching under the counter.[4]  (Officers' Facts ¶ 28).  When Alattiyat failed to comply, Gooch took the phone from him, shoved and handcuffed him, and placed him in the rear seat of a police cruiser.  (Pl.'s Facts ¶ 17).  According to the Plaintiff, he remained in the police car with the windows up in the summer heat for over twenty minutes.[5]  (Pl.'s Facts ¶ 17).  The Plaintiff was then arrested and charged with "Disorderly Conduct and Resisting Official Detention."  (Pl.'s Facts ¶ 18).  Gooden was not in the store when Gooch arrested Alattiyat.  (Officers' Facts ¶ 38).

After Alattiyat was released from custody, he returned to his store only to discover that it had been ransacked, burglarized and that the surveillance system and recording equipment, including the tape-recording of June 24, 2005, had been taken.  (Am. Compl. ¶¶ 50-52); (Officers' Facts ¶¶ 51-52).  Alattiyat then reported these events to the Inspectional Services Bureau, which he claims

---

[3]The Plaintiff admits reaching for the phone but denies his hand was underneath the counter.  (Officers' Facts ¶ 31).

[4]The Plaintiff disputes that Officer Gooch told him to remove his hand from beneath the counter.  (Officers' Fact ¶ 30).

[5]The officers dispute that the Plaintiff was placed in an enclosed vehicle.  (Officers' Facts ¶ 41).

3

failed to conduct a thorough investigation. (Am. Compl. ¶¶ 60-64). Other than conducting an investigation, MPD took no further action against the Defendants. (Am. Compl. ¶ 67). The charges against Alattiyat were eventually dismissed by the Shelby County District Attorney's Office. (City's Facts ¶ 20).

Since 1984, all Memphis police officers are trained "in sessions ranging from 224 to 268 hours at the police academy. Later, they attend basic Recruit Police Training where they undergo an additional 480 to 600 hours of training." (City's Facts ¶ 27). The training consists of basic courses in "Constitutional Law, Search and Seizure, Use of Force, Police Pursuits and Civil Liability." (City's Facts ¶ 29). Specifically relevant to the instant motion, Defendant Gooch attended a total of 840 hours of training, which exceeds the minimum of 320 hours . . . required" by the state of Tennessee. (City's Facts ¶ 31). Officer Gooden similarly attended a total of 816 hours of training. (City's Facts ¶ 33).

STANDARD OF REVIEW

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56 (c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). When the motion is supported by documentary proof such as depositions and

4

affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2552. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

I.      Federal Claims.

The Defendant officers submit they are entitled to summary judgment because they did not violate any constitutional right of the plaintiff. In the alternative, the officers argue that even if a constitutional violation occurred, they are entitled to prevail under the doctrine of qualified immunity. The City maintains the lawsuit against it should be dismissed because Alattiyat has failed to present any custom, policy or procedure of this municipal Defendant which was the cause of the alleged constitutional violation.

A.      Section 1983 Generally.

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a section 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock, 330 F.3d at 902. "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001). "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986).

B.      Individual Liability Under Section 1983

As the Defendants correctly point out, the Fourth Amendment is only involved when an officer of the state has "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n.16 (1968).[6]

---

[6]The amended complaint asserts the individual officers violated Alattiyat's Fourth and Fourteenth Amendment rights. Concerning the Fourteenth Amendment, the amended complaint contends these officers violated the Plaintiff's right to be free from a deprivation of life, liberty, or property without due process of law. (Am. Compl. ¶ 70).

Initially, the Court notes that the Fourth Amendment has been made applicable to the State of Tennessee through the due process clause of the Fourteenth Amendment and the doctrine of incorporation. See Wolf v. Colorado, 338 U.S. 25, 69 S. Ct. 1359 (1949). However, where a specific constitutional right is alleged to have been abridged, the Court's analysis must be of that right and not the more generalized right to due process contained within the Fourteenth Amendment. See Riley v. Kurtz, 893 F. Supp. 709, 718 (E.D. Mich 1995) ("It is only in a case where an incorporated right, such as a First Amendment right, is not available to give substantive

6

It is undisputed by the Plaintiff that only Officer Gooch restrained and arrested him. The complaint does not allege a conspiracy among the officers to violate the Plaintiff's constitutional rights. Rather, it asserts direct liability against each individual officer. See, e.g., (Order Granting in Part, Den. in Part Mot. to Dismiss, Mar. 15, 2007, at 5-6) (holding that "because [Alattiyat] has apparently conceded that he does not intend to seek damages based upon conspiracy, the Court finds that the Plaintiff has abandoned such a claim, to the extent it ever existed, and it is hereby DISMISSED"). Although Officer Gooden was present, there is no evidence before the Court indicating that she was ever involved in detaining or arresting the Plaintiff. Because none of the actions of Officer Gooden as contended by Alattiyat implicated the Fourth Amendment[7], her motion for summary judgment is GRANTED.

C.   Qualified Immunity

As a shield to a section 1983 action, a law enforcement officer may claim protection from

---

content to the Fourteenth Amendment that the trial court must" consider the case under a more generalized Fourteenth Amendment analysis). Thus, the Court will only address the Plaintiff's complaint of an illegal search and seizure under the Fourth Amendment.

[7]The amended complaint alleges that Officer Gooden verbally assaulted the Plaintiff. Such actions, however, do not constitute a seizure. See United States v. Mendehall, 446 U.S. 544, 554 100 S. Ct. 1870, 1877 (1980) ("[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.") (emphasis added); accord California v. Hodari D., 499 U.S. 621, 111 S. Ct. 1547 (1991). Alternatively, Alattiyat argues that this officer's conduct was causally connected to his illegal arrest. See Hall v. Shipley, 932 F.2d 1147, 1154 (6th Cir. 1991). However, in Hall, the officer in question "not only was the prime mover in obtaining the warrant and in planning and initiating the search itself, but he participated in the search once inside the dwelling. Both in entering the apartment and in the manner of the search itself a direct causal connection exists between Officer Shipley's actions and the alleged constitutional violation as to the reasonableness of the search." Id. Here, the Court finds no relationship between Gooden's verbal assault and Gooch's ultimate detention and arrest of the Plaintiff.

liability through qualified immunity. Crockett v. Cumberland Coll., 316 F.3d 571, 579 (6th Cir. 2003). "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 1696 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)); see also Buckner v. Kilgore, 36 F.3d 536, 539 (6th Cir. 1994), reh'g and suggestion for reh'g en banc denied, (Nov. 21, 1994). In Saucier v. Katz, the Supreme Court articulated a two step test to determine whether qualified immunity is appropriate. 533 U.S. 194, 200-01, 121 S. Ct. 2151, 2155-56; see also Solomon v. Auburn Hills Police Dep't, 389 F.3d 167, 172 (6th Cir. 2004). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 200-01, 121 S. Ct. at 2155-56. If this question is answered in the affirmative, "the next, sequential step is to ask whether the right was clearly established." Id. at 201, 121 S. Ct. at 2156. As to the second step, a court must decide "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted, . . . without regard to [his] underlying intent or motivations." Solomon, 389 F.3d at 173 (citations and emphasis omitted). In order to support a finding that an officer is entitled to qualified immunity, it must be concluded that his actions were objectively reasonable. Id. at 174.

In this case, as asserted by the Plaintiff, Gooch detained and arrested him simply because he was attempting to call the police department and report the alleged intimidation and harassment by Defendants Gooch, Gooden, and others. The Court cannot conclude that such actions by Officer

Gooch were objectively reasonable, and thus, Gooch's motion for summary judgment is DENIED.

      C.      <u>Municipal Liability Under § 1983.</u>

Even assuming a constitutional violation has occurred, it does not necessarily follow that liability may properly be laid at the doorstep of the governmental entity.

Local governments such as the City of Memphis are considered "persons" for purposes of the second prong of the section 1983 showing. <u>See</u> <u>Holloway v. Brush</u>, 220 F.3d 767, 772 (6th Cir. 2000). Nonetheless, cities are not "liable for every misdeed of their employees and agents." <u>Alkire v. Irving</u>, 330 F.3d 802, 814-15 (6th Cir. 2003) (quoting <u>Garner v. Memphis Police Dep't</u>, 8 F.3d 358, 363 (6th Cir. 1993)). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." <u>Monell v. N.Y. City Dep't of Soc. Serv.</u>, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978). Instead, the Supreme Court has held that "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." <u>Bd. of County Comm'rs of Bryan County, Okla. v. Brown</u>, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388 (1997) (citing <u>Monell</u>, 436 U.S. at 694, 98 S. Ct. at 2027; <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 1298-99 (1986); and <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205 (1989)). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." <u>Brown</u>, 520 U.S. at 404, 117 S. Ct. at 1388 (citing <u>Monell</u>, 436 U.S. at 690-91, 98 S. Ct. at 2035-36).

> A "custom" for purposes of <u>Monell</u> liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" must include deeply embedded traditional ways of carrying out state policy. It must reflect a course

9

>of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

Doe v. Claiborne County, Tenn., 103 F.3d 495, 507-08 (6th Cir. 1996) (internal quotation marks and citations omitted). A plaintiff must, in order to show a custom or policy, adduce specific facts in support of his claim. Conclusory allegations will not lie. Culberson v. Doan, 125 F. Supp. 2d 252, 263-64 (S.D. Ohio 2000).

It is not enough for a section 1983 plaintiff to identify conduct attributable to a municipality. Rather,

>[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404, 117 S. Ct. at 1388. "[A] showing of simple or even heightened negligence will not suffice." Culberson, 125 F. Supp. 2d at 263 (emphasis added). Thus, to recover, a plaintiff

>must show that his civil rights were violated pursuant to and as a direct result of the [municipality's] official policy or custom. The burden in this regard requires a showing that the unconstitutional policy or custom existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused his constitutional violation.

Napier v. Madison County, Ky., 238 F.3d 739, 743 (6th Cir. 2001) (internal citations omitted). In the case of a failure to train or investigate, a plaintiff must show that the municipality's failure to train or investigate amounts to "deliberate indifference" to the rights of its citizens. See Harris, 489 U.S. at 389, 109 S. Ct. at 1205.

It is undisputed that the City of Memphis requires its officers, including those named herein,

to undergo extensive training, including training on the Fourth Amendment.  Other than the conclusory allegations in the complaint, the Plaintiff has put forth no evidence which would refute the evidence of extensive training submitted by the City and allow this Court to find that Memphis' failure to train Gooch, Gooden, and Dickerson constitutes "deliberate indifference" to Alattiyat's constitutional rights.  See Culberson, 125 F. Supp. 2d at 263-64; see also Harris, 489 U.S. at 389, 109 S. Ct. at 1205.  Fatal to his claims against this municipality, Alattiyat has not presented any evidence of deliberate conduct by the City of Memphis which was the "moving force" behind his alleged injury.  See Brown, 520 U.S. at 404, 117 S. Ct. at 1388.  Because the plaintiff has failed to "show that the municipal action was taken with the requisite degree of culpability [or] demonstrate a direct causal link between the municipal action and the deprivation of [his] federal rights," City of Memphis' motion for summary judgment is GRANTED.  Id.

## CONCLUSION

Based on the foregoing reasons, all claims against Defendant Dickerson are DISMISSED with prejudice.  Defendant Gooden's motion for summary judgment is GRANTED, but Defendant Gooch's motion for summary judgment is DENIED.  Finally, Defendant City of Memphis' motion for summary judgment is GRANTED.

**IT IS SO ORDERED** this 9th day of August, 2007.

                                                  s/ J. DANIEL BREEN
                                                  UNITED STATES DISTRICT JUDGE